UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETTA JOHNSON,<br><br>           Plaintiff,<br><br>     v.<br><br>ALAMEDA COUNTY SHERIFF'S DEPARTMENT ARRESTING DEPUTY #1, et al.,<br><br>           Defendants. | Case No. 20-cv-08283-DMR<br><br>**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 75 |

This case arises out of a February 2019 incident between self-represented Plaintiff Etta Johnson and officers of the Alameda County Sheriff's Office ("ACSO"). Plaintiff filed the operative complaint against several unnamed ACSO officers (together, "Defendants") on April 4, 2022.[1] [Docket No. 38 (Third Amended Complaint ("TAC")).] The TAC states the following claims for relief: (1) 42 U.S.C. § 1983 ("Section 1983") claim for excessive force, based on the Fourth Amendment; (2) battery; and (3) conversion. Defendants now move for partial summary judgment on the first and second claims. [Docket No. 75 ("Mot.").] Plaintiff opposed and Defendants replied. [Docket Nos. 81 ("Opp'n"), 83 ("Reply").] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, Defendants' motion is granted.

I.     **BACKGROUND**

    A.     **Defendants' Evidence**

In support of their motion for partial summary judgment, Defendants submit 1) video

---

[1] Plaintiff's third amended complaint refers to the ACSO officers as Doe #1, the arresting officer on February 13, 2019, and Does #2-20, officers or other employees of the ACSO responsible for Plaintiff's alleged injuries.

evidence of ACSO's arrest of Plaintiff on February 14, 2019 between 3:30 a.m. and 4:00 a.m. in the area of International Boulevard and 73rd Avenue in Oakland (Docket No. 75-1 (Amy Lu Decl., Oct. 5, 2023) ¶¶ 2-6, Exs. A (Lieutenant Michael Buckhout's Body-Worn Camera ("BWC") footage between 3:25 a.m. and 4:03 a.m. ("Buckhout BWC")), B (Sergeant Michael Bitle's BWC footage between 3:28 a.m. and 3:34 a.m. ("First Bitle BWC")), C (Sergeant Michael Bitle's BWC footage between 3:52 a.m. and 3:58 a.m. ("Second Bitle BWC")), D (Sergeant Victor Galindo's BWC footage between 3:26 a.m. and 4:02 a.m. ("Galindo BWC")), and E (Deputy Michael Ella's BWC footage between 3:26 a.m. and 3:33 a.m. ("Ella BWC")); 2) a copy of ACSO's General Order No. 8.17 regarding the use, purpose, maintenance, and storage of data captured on BWCs (*Id.*, Ex. E ("ACSO General Order No. 8.17"); 3) excerpts of Plaintiff's deposition taken on June 21, 2023 (Docket No. 75-2 (Cody L. Saal Decl., Oct. 5, 2023) ¶ 2, Ex. A ("Plaintiff's Dep.")); and a copy of the Incident/Criminal Report regarding Plaintiff's arrest on February 14, 2019 (Docket 75-3 (Marcus Reynolds Decl., Oct. 5, 2023) ¶ 2, Ex. A ("Incident Report")).

The video evidence contains date and time stamps for the early morning hours of February 14, 2019. It shows Plaintiff on Line 801 of the AC Transit bus, and ACSO officers Buckhout, Bitle, Galindo, and Ella responding to an incident at International Boulevard and 73rd Avenue, where the bus was stopped. *See* Buckhout BWC at 0:45; *see also* First Bitle BWC, Galindo BWC, and Ella BWC. The officers were apparently called to the scene after a report that Plaintiff hit a male passenger in the face. *See* Buckhout BWC at 3:16; *see also* Incident Report.

As discussed below, Plaintiff does not dispute the contents of the video evidence. Instead, Plaintiff argues that the video evidence depicts a different incident that occurred sometime in September 2019 and not February 14, 2019. Opp'n at 2.

At around 3:25 a.m.,[2] the video shows Buckhout walking onto the bus during a verbal altercation between Plaintiff and another woman. Buckhout BWC at 1:10. Buckhout interrupts them and asks Plaintiff what is going on. *Id.* The video shows Plaintiff responding loudly and

---

[2] The watermark date and time information on the officers' BWC footage uses Coordinated Universal Time ("UTC"), which is 8 hours ahead of Pacific Standard Time ("PT"). Lu Decl. ¶ 9. Accordingly, where the BWC footage indicates that the events occurred between 11:25 a.m. and 12:03 p.m. UTC, the local time was between 3:25 a.m. and 4:03 a.m. PT.

slurring her words. *Id.* She states that the man sitting next to her wearing a Yankees hat "went in [her] purse." *Id.* at 1:46. Buckhout asks Plaintiff to step off the bus with him. *Id.* at 2:05. Plaintiff refuses, starts cursing, and accuses other passengers of having stolen money from her. *Id.* at 2:07. Eventually, after asking her to get off the bus several times, Buckhout and Bitle lift Plaintiff up by her arms to walk her off the bus. *Id.* at 6:26.

Once outside, Buckhout and Bitle place Plaintiff in handcuffs with Ella's help. Buckhout BWC at 7:02; *see also* Ella BWC at 4:40. The officers walk Plaintiff to a patrol car when she yells "quit holding me like that," curses, and appears to spit on Britle. Buckhout at 7:45. Buckhout and Britle proceed to place Plaintiff in the back seat of the patrol car. *Id.*

Less than ten minutes later, at around 3:41 a.m., the officers return to the patrol car. At that point, Galindo asks Plaintiff to submit to a breathalyzer test. Galindo BWC at 14:46. The video shows Plaintiff laying down on the back seat of the car and mumbling incoherently. *Id.* at 15:51. Galindo attempts to administer the breathalyzer test several times, placing the breathalyzer near or in Plaintiff's mouth, but Plaintiff is unable to blow properly into the device. *Id.* at 16:40-18:11.

The officers ultimately decide to arrest Plaintiff and take her to Santa Rita Jail. Buckhout 31:48. Around 3:52 a.m., they help Plaintiff clean up her face and walk her to another patrol car while she continues to cry and yell incoherently. *Id.* at 28:30. Plaintiff is then transported to Santa Rita Jail where she is eventually booked. Incident Report at 5.

**B.    Plaintiff's Evidence**

To oppose this motion, Plaintiff filed her December 11, 2023 sworn declaration and an exhibit.[3] *See* Opp'n at 5-7, 8-13.[4] The exhibit contains two items. The first is a Citizen's Complaint completed by Plaintiff and received by ACSO on April 24, 2019. It identifies Plaintiff but does not contain any other details. The second is Plaintiff's application for crime victim

---

[3] The court previously notified Plaintiff of her obligation to come forth with affirmative evidence to oppose summary judgment, pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). [Docket No. 64.]

[4] Citations to Plaintiff's opposition papers use page numbers assigned by the electronic case filing ("ECF") system upon filing.

3

1  compensation received by the California Victim Compensation Board ("CalVCB") on May 8,
2  2019. *Id.*[5]

3  Two days after she filed her opposition brief, Plaintiff filed an additional one-page exhibit.
4  [Docket No. 82.] It contains a medical record from Alameda Health System dated July 11, 2021.
5  The progress note states: "[P]lease tell [patient] that the MRI of her elbow, where she has had pain
6  for 2 years after an injury during an altercation with the sheriff, shows a partial tear of her biceps
7  tendon."[6]

8  Plaintiff makes the following statements in her sworn declaration. On the night of
9  February 13, 2019, Plaintiff was riding Line 801 on the AC Transit bus toward her home in West
10 Oakland. Opp'n at 5. It was raining. *Id.* Plaintiff's purse was on the seat behind the bus driver as
11 she was paying her fare. *Id.* As she was paying, Plaintiff saw a man reach into the side of her
12 purse and grab her phone. *Id.* As he pulled her phone out of her purse, Plaintiff hit his hand and
13 told him to let go of her phone and "stay out of [her] purse." *Id.* The bus driver asked the man if
14 Plaintiff hit him, and he said that she did. *Id.* The bus driver then called the Alameda County
15 sheriff. *Id.*

16 An unidentified ACSO officer – whom Plaintiff refers to as "the sheriff" – boarded the bus
17 and asked the man if Plaintiff hit him. Opp'n at 5. He told the officer yes. *Id.* The officer asked
18 the man if he wanted to press charges, and the man said no. *Id.* Thereafter, the officer ordered
19 Plaintiff to get up and disembark. *Id.* Plaintiff had two bags and her purse with her. *Id.* The
20 officer took one of Plaintiff's bags from her, and she carried the other bag and her purse off the
21 bus. *Id.* Once she reached the sidewalk, the officer seized her right arm and twisted it very hard,

---

[5] The court does not consider information in Plaintiff's CalVCB application because it is irrelevant. In the application, Plaintiff lists herself as claimant and crime victim regarding an incident that occurred on February 24, 2019 while Plaintiff was in custody at Santa Rita Jail. She describes her injuries as "smashing fingers, denied medical care, delaying commissary food, given wrong medication." Opp'n at 11. This lawsuit is limited to Plaintiff's February 14, 2019 arrest and does not encompass any problems Plaintiff allegedly encountered while incarcerated in Santa Rita Jail.

[6] Defendants object to this exhibit as untimely filed, lacking foundation, and constituting inadmissible hearsay. [Docket No. 84.] Because the court does not rely on the medical record in deciding the motion, Defendants' objections are denied as moot.

4

1    and she heard a "pop" in her elbow and shoulder. *Id.* She fell to the ground in pain. *Id.* The
2    officer grabbed her off the ground by her clothes and threw her into the back of his car. *Id.* at 5-6.
3    The officer then shoved a breathalyzer into her mouth and told her to "blow on this." *Id.* at 6. The
4    officer did not tell Plaintiff he was going to administer a breathalyzer test before putting the
5    breathalyzer into her mouth. *Id.* The officer told her she was not "blowing correctly" into the
6    breathalyzer, and he told her to blow into it again. *Id.* Plaintiff passed out, possibly due to her
7    arm pain. *Id.* She says that when she came to, she was at Santa Rita jail. *Id.* Her arrest
8    paperwork stated that she was arrested for public drunkenness, but she claims she had not
9    consumed any alcohol that night. *Id.* On April 10, 2019, the criminal charge against her was
10   dismissed. *Id.* Plaintiff states that she suffers from ongoing medical problems as a result of the
11   officer's actions, including pain and nerve damage. *Id.*

12        In concluding her declaration, Plaintiff makes four additional assertions about the night of
13   the alleged incident: 1) the bus driver was an older Black woman, not a white man; 2) there was
14   one officer involved – not five; 3) the incident occurred at 81st Avenue and International
15   Boulevard in Oakland, not on 72nd Avenue; and 4) the incident took place on February 13, 2019
16   at approximately 11:00 p.m. and "definitely before midnight." Opp'n at 7.

17   **II.     LEGAL STANDARD**

18        A court shall grant summary judgment "if . . . there is no genuine dispute as to any material
19   fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden
20   of establishing the absence of a genuine issue of material fact lies with the moving party.
21   *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477
22   U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-
23   moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.
24   2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue
25   exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could
26   return a verdict for the nonmoving party. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200
27   F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The
28   court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of material fact exists. *Devereaux*, 263 F.3d at 1076. More than a "scintilla of evidence" must exist to support the non-moving party's claims. *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477 U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as issue" will not suffice. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at 587).

### III. DISCUSSION

Defendants move for summary judgment on the Section 1983 claim for excessive force as well as the battery claim.

#### A. Excessive Force

##### 1. Legal Standard

A claim of excessive force in the context of an arrest or investigatory stop implicates the Fourth Amendment right to be free from "unreasonable . . . seizures." U.S. Const. amend. IV; *see Graham v. Connor*, 490 U.S. 386, 394 (1989). Courts analyze claims of excessive force under an "objective reasonableness" standard. *Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010) (citing *Graham*, 490 U.S. at 395). The reasonableness inquiry in excessive force cases is an objective one: whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment

6

1    interests against the countervailing governmental interests at stake." *Id*. at 396 (citations and
2    internal quotation marks omitted).

3          Because the reasonableness standard from *Graham* is not capable of precise definition or
4    mechanical application, "its proper application requires careful attention to the facts and
5    circumstances of each particular case, including the severity of the crime at issue, whether the
6    suspect poses an immediate threat to the safety of the officers or others, and whether he is actively
7    resisting arrest or attempting to evade arrest by flight." *Id*. The "most important single element"
8    is whether there is an immediate threat to safety. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th
9    Cir. 2005) (en banc) (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)). These factors
10   "are not exclusive. Rather, [the court] examine[s] the totality of the circumstances and consider[s]
11   'whatever specific factors may be appropriate in a particular case, whether or not listed in
12   *Graham*.'" *Bryan*, 630 F.3d at 826 (citing *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir.
13   1994)). Courts also consider the "'quantum of force' used to arrest the plaintiff, the availability of
14   alternative methods of capturing or detaining the suspect, and the plaintiff's mental and emotional
15   state." *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (internal citations omitted).

16         "[T]he reasonableness of force used is ordinarily a question of fact for the jury." *Liston v.
17   Cty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997). "Because the excessive force inquiry
18   nearly always requires a jury to sift through disputed factual contentions, and to draw inferences
19   therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as
20   a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681
21   F.3d 1127, 1130 (9th Cir. 2012) (internal quotations and citations omitted). However, "defendants
22   can still win on summary judgment if the district court concludes, after resolving all factual
23   disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under
24   the circumstances." *Scott*, 39 F.3d at 915.

25         **2.    Analysis**

26         Plaintiff claims Defendants engaged in excessive force by twisting her right arm, causing
27   ongoing pain and nerve damage. Opp'n at 5-6. She concedes that the BWC video evidence
28   submitted by Defendants does not show any ACSO officer injuring or twisting her arm. Plaintiff's

7

Dep. at 122:25-123:25, 130:24-131:13. Instead, she argues Defendants confused the February 2019 incident with a different incident that occurred in September 2019. Opp'n at 2. According to Plaintiff, the videos depict the September 2019 incident – not the arrest at issue in her case. *Id.*; *see also* Plaintiff's Dep. at 131:14-23 (testifying that she thinks the BWC video might be depicting an incident in September).

Plaintiff highlights four supposed discrepancies between her recollection of the incident and the BWC footage: 1) The bus driver was an older Black woman, not a white man; 2) only one officer was involved, not five; 3) the incident occurred at International Boulevard and 81st Avenue, not 72nd Avenue; and 4) the incident occurred on February 13, 2019 at around 11:00 p.m., not after midnight. Opp'n at 7. Defendants respond that the allegations in Plaintiff's complaint and the statements in her declaration describe the same incident shown in the BWC footage and detailed in the Incident Report. Reply at 2.

The evidence demonstrates that the BWC footage depicts the February 2019 incident that forms the basis of Plaintiff's lawsuit. Many statements in Plaintiff's declaration, as well as the allegations in the operative complaint, correspond to the events depicted in the BWC video evidence. For example, the BWC footage shows that the incident occurred on Line 801, at "night time" while it was "raining" (*compare* Buckhout BWC at 20:33; Galindo BWC at 7:54, *with* TAC ¶ 9; Opp'n at 5); the incident involved a man reaching into Plaintiff's purse and Plaintiff striking him (*compare* Buckhout BWC at 1:41; Galindo BWC at 1:04, *with* TAC ¶ 10; Opp'n at 5); Plaintiff was asked to get off the bus by an ACSO officer (*compare* Buckhout BWC at 2:05, *with* TAC ¶ 11; Opp'n at 5); and Plaintiff was told to blow into a breathalyzer while sitting in a patrol car (*compare* Galindo BWC at 14:46, *with* TAC ¶ 13; Opp'n at 6).

In addition, Plaintiff asserts several times in the videos that it's "Black history month." *See, e.g.*, Ella BWC at 4:18. The court takes judicial notice of the fact that Black history month is observed in February – not September – because it is a fact generally known within its jurisdiction. *See* Fed. R. Evid. 201(c)(1) ("[t]he court . . . may take judicial notice on its own"). Finally, the Incident Report corroborates Plaintiff's assertion that the bus driver was a Black woman. The report was prepared by ACSO officer Victor Galindo at 3:13 a.m. on February 2019.

1    It names the reporting party, i.e., the bus driver, as S. Scott, and lists her race as Black and her sex
2    as female. Incident Report at 2.
3          Defendants also submit evidence that ACSO employees cannot alter, manipulate, or distort
4    BWC footage, and therefore, the watermark date and time information on the videos establish that
5    the events captured on the five officers' BWC videos occurred between 3:25 a.m. and 4:03 am PT
6    on February 14, 2023. Lu, a technician with ACSO, explains that the officers' BWC footage was
7    made and kept in the ACSO's regular course of business. Lu Decl. ¶ 8. BWCs are worn by law
8    enforcement personnel to record events and activities in real time. *Id.* The BWC footage is then
9    downloaded to an electronic platform maintained by ACSO, Evidence.com. *Id.* After their shift,
10   each ACSO employee downloads his or her BWC footage to the platform, so that the data is
11   entered "at or near the time" of the events that are recorded. *Id.* Lu asserts that "ACSO
12   employees cannot alter, manipulate, or distort the [BWC] footage in any way prior to, during, or
13   after the downloading process to the Evidence.com database." *Id.* The footage is then maintained
14   on the platform, and its contents are not altered, manipulated, or distorted "in any way." *Id.*
15   Likewise, Lu clarifies that the watermark date and time information on the BWCs cannot be
16   modified. *Id.* ¶ 9.
17         Plaintiff does not respond to Defendants' evidence or offer any evidence to support her
18   belief that the BWC footage was altered to display a February 14, 2019 date on an incident that
19   happened on September 5, 2019.
20         On this record, the court finds that no reasonable juror could conclude that the BWC
21   footage depicts something other than the February 14, 2019 incident at issue in this case.
22   Although Plaintiff may remember things differently from what is shown on camera, she does not
23   submit any evidence suggesting that the video was altered or that it depicts events from a date
24   other than February 14, 2019.
25         Plaintiff alleges that the officers engaged in excessive force by twisting her right arm.
26   TAC ¶ 13. Plaintiff admitted in her deposition that the events captured on the BWC footage do
27   not show any officer injuring or twisting her arm. Plaintiff's Dep. at 122:25-123:25, 130:24-
28   131:13. Because Plaintiff concedes that the video evidence submitted by Defendants does not

9

1 show any ACSO officer injuring or twisting her arm, and there is no evidence disputing the
2 authenticity of Defendants' video evidence, there is no genuine issue for trial. Accordingly,
3 Defendants' motion for summary judgment on the excessive force claim is granted.

### B. Battery

"A battery is any intentional, unlawful and harmful contact by one person with the person of another." *Ashcroft* v. *King*, 228 Cal. App. 3d 604, 611 (1991) (internal citations omitted). "The law governing a [California] state law claim for battery is the same as that used to analyze a claim for excessive force under the Fourth Amendment." *See Warren v. Marcus*, 78 F. Supp. 3d 1228, 1248 (N.D. Cal. 2015); *see also Barragan*, 2016 WL 4549130, at *6 (explaining that "battery claims brought under California law are analyzed under the reasonableness standard used to evaluate Fourth Amendment claims" and denying summary judgment on the state law battery claim on the same grounds as the federal excessive force claim) (citing *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274-75 (1998) and *Saman v. Robbins*, 173 F.3d 1150, 1157 n.6 (9th Cir. 1999)).

As discussed above, Plaintiff does not dispute that the incident captured on Defendants' BWCs does not show a battery. Instead, she argues that the BWC footage depicts the wrong incident. Opp'n at 2. For the reasons set forth above, Plaintiff has not submitted evidence to support her position that the BWC footage has been altered and shows events from a different date. Having failed to present evidence of "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), Defendants, as "the moving party[,] [are] entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. 2548. Accordingly, Defendants' motion for summary judgment on the battery claim is granted.

//
//
//
//
//
//

//

## IV. CONCLUSION

For the foregoing reasons, Defendants' partial motion for summary judgment is granted. The only claim remaining in this case is for conversion. The court will hold a case management conference on **March 20, 2024 at 1:30 p.m. by Zoom** to set a case schedule for the conversion claim. The parties shall file an updated joint case management conference statement **by March 13, 2024.**

**IT IS SO ORDERED.**

Dated: January 22, 2024

_____
DONNA M. RYU
Chief Magistrate Judge

All counsel and parties may access the webinar information (public hearings) at https://cand.uscourts.gov/judges/ryu-donna-m-dmr/.

Webinar ID: 161 278 7819
Password: 053378

Or iPhone one-tap :
US: +16692545252,,1612787819#,,1#,053378# or
+16468287666,,1612787819#,,1#,053378#

Or Telephone:
Dial (for higher quality, dial a number based on your current location):
US: +1 669 254 5252 or +1 646 828 7666 or +1 669 216 1590 or +1 551 285 1373 or 833 568 8864 (Toll Free)
Webinar ID: 161 278 7819
Password: 053378
International numbers available: https://cand-uscourts.zoomgov.com/u/acCvNfz7b

Or an H.323/SIP room system:
H.323: 161.199.138.10 (US West) or 161.199.136.10 (US East)
Meeting ID: 161 278 7819
Password: 053378
SIP: 1612787819@sip.zoomgov.com
Password: 053378

Information on Zoom Guidance and Setup is available here:
https://www.cand.uscourts.gov/zoom/.